**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE RIDGE WALLET LLC,<br>Plaintiff,<br>v.<br>MOSAIC BRANDS, INC. d/b/a STORUS, a Delaware corporation; MIA KAMINSKI, an individual; and SCOTT KAMINSKI, an individual,<br>Defendants. | Case No. 2:23-cv-09673-AB-JC<br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

The Court conducted a bench trial[1] on October 27 and 28, 2025.

Plaintiff The Ridge Wallet LLC ("Ridge") pursued the following claims against Defendants Mosaic Brands Incorporated d/b/a/ Storus ("Mosaic"), Mia Kaminski ("Ms. Kaminski"), and Scott Kaminski ("Mr. Kaminski") ("Defendants"): (1) False Advertising under the Lanham Act (15 U. S.C. § 1125); and (2) Unjust Enrichment.

Defendants pursued the following counterclaims against Ridge: (1) Unfair Business Practices in Violation of Cal. Bus. & Profs. Code § 17200; and (2) Abuse of Process.

[1] At the final pretrial conference, the parties stipulated to a bench trial instead of a jury trial. *See* Transcript 10/15/2025 (Dkt. No. 183) 3:14-7:2; *see also* Stipulation (Dkt. No. 162) and Order (Dkt. No. 166).

The Court has federal question jurisdiction based on Ridge's Lanham Act claims and has supplemental jurisdiction over the remaining claims.

## I. SUMMARY OF DISPUTE

The Court briefly summarizes the background of this case.

In August 2023, Ridge and Mosaic negotiated a Settlement Agreement to resolve their years-long intellectual property dispute over the design of their competing smart wallets. The main terms of the Settlement Agreement required Ridge to pay Mosaic $350,000 and in exchange, Mosaic would: stop selling or offering for sale, by October 1, 2023, smart wallets described as "Released Products," but could still sell "Permitted Mosaic Products" depicted in Appendix B to the Settlement Agreement; Mr. Kaminski would provide a declaration relating to his claimed prior art; and the parties would end their lawsuits. Mosaic paid Ridge $350,000, Mr. Kaminksi provided the declaration, and the parties ended their lawsuits.

However, shortly thereafter, Ridge came to believe that Mosaic was still selling after October 1, 2023, Released Products that Mosaic agreed to no longer sell. There was some preliminary communication between Ridge and Ms. Kaminski about the issue. On November 15, 2023, Ridge filed this action alleging a single claim for breach of contract for breach of the Settlement Agreement. *See* Compl. (Dkt. No. 1). On December 8, 2023, Ridge filed an Ex Parte Application for a Temporary Restraining Order ("TRO Appl.," Dkt. No. 13), seeking to stop Defendants from selling the disputed smart wallets as agreed in the Settlement Agreement, and to do so before the prime holiday sales season, which harm was the premise of Ridge's claim of irreparable harm. The Court granted the TRO but then declined to issue a preliminary injunction.

Ridge filed a First Amended Complaint and then a Second Amended Complaint ("SAC," Dkt. No. 65), which was the operative complaint at the time of trial. The SAC alleges claims for (1) breach of contract; (2) false advertising under the Lanham Act, 15 U.S.C. § 1125; and (3) unjust enrichment/restitution.

Thereafter, the Defendants filed an Amended Answer and Counterclaims (Dkt. No. 91) alleging counterclaims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unfair business practices in violation of Cal. Bus. & Profs. Code §17200; and (4) abuse of process.

At some point during this litigation, the parties discovered that they disagreed about which version of the Settlement Agreement they agreed to. The two competing versions of the Settlement Agreement—one signed by Defendants on August 11, 2023, and the other signed by Ridge on August 14, 2023—materially differ: their respective Appendices B depict different "Permitted Mosaic Products."

Ridge moved for summary adjudication that the August 14 version of the Settlement Agreement was enforceable, or in the alternative, that there was no enforceable agreement. The Court determined that triable issues of material fact precluded summary adjudication of whether Mosaic was bound by the August 14 version, but that if the August 14 version was not binding, then there was no binding agreement because it was undisputed that Ridge never agreed to the August 11 version, and the Court could not "reform" these versions into a contract. *See* Order (Dkt. No. 108).

Thereafter, both sides agreed that there was no binding agreement and dropped their breach of contract-related claims: Ridge dropped its breach of contract claim, and Defendants dropped their breach of contract and breach of the implied covenant claims. The parties also stipulated to a bench trial on the remaining claims: Ridge's claims against Defendants for (1) False Advertising under the Lanham Act (15 U. S.C. § 1125), arising out of Mosaic's alleged sale of smart wallets that caused consumer confusion with Ridge's smart wallets; and (2) Unjust Enrichment / Restitution, seeking to recover the $350,000 in consideration that Ridge paid Mosaic in connection with the failed Settlement Agreement; and Mosaic's counterclaims against Ridge for (1) Unfair Business Practices in Violation of Cal. Bus. & Profs. Code § 17200; and (2) Abuse of Process, both arising from Mosaic's allegation that, in connection with its

TRO Application, Ridge hid material facts from the Court and misled the Court into granting the TRO in order to interfere with Mosaic's business operations. Mosaic seeks to recover $348,801.00 in sales lost as a result of Ridge's conduct, and attorneys' fees, among other relief.

## II. FINDINGS OF FACT[2]

### A. Admitted and Stipulated Facts

The parties admitted or stipulated to the below facts in advance of trial (Dkt. No. 165 at 4-5):

Sean D. Frank is the Chief Executive Officer of Ridge.

Daniel Kane is the Founder and presently is the Chief Product Officer of Ridge.

Benjamin E. Weed was outside counsel for Ridge in August 2023 and was responsible for negotiating with Mosaic on Ridge's behalf.

Stephen M. Lobbin was Defendants' outside counsel at least through August 11, 2023.

Michael Collins is a private investigator hired by Ridge to investigate Mosaic's false advertising.

Mia Kaminski is the Chief Executive Officer of Mosaic.

Scott Kaminski is an independent contractor for Mosaic.

On August 11, 2023, Mosaic signed what it understood was a settlement agreement with Ridge to settle pending litigation.

Ridge never signed the August 11, 2023, draft of the agreement.

On August 14, 2023, Ridge signed a different draft of the settlement agreement.

Neither party learned that there is no binding contract until after this lawsuit was filed.[3]

---

[2] Any conclusion of law which is deemed a finding of fact is incorporated herein by reference.

[3] As the parties agree that there is no binding settlement agreement, much of the evidence presented at trial going into the minute details of the parties' negotiations—

After Ridge settled with Mosaic, Ridge was still involved in patent infringement litigation in the ITC.

**B. Facts Proven at Trial**[4]

As of July 2023, there were two ongoing litigations between the parties concerning the intellectual property rights to their competing smart wallets.

First was a suit for patent infringement that Mosaic brought against Ridge, *The Ridge Wallet LLC v. Mosaic Brands, Inc.* (Case No. 2:20-cv-04556-AB-JC) ("District Court Litigation"). Ridge filed counterclaims for infringement of its '808 Patent and tort counterclaims arising out of invoices Mosaic produced in the litigation that Ridge alleged were fraudulent.

Second, on February 3, 2023, Ridge filed a Complaint at the United States International Trade Commission, *In the Matter of Certain Compact Wallets and Components Thereof* (Inv. No. 337-TA-1355) ("ITC Litigation"), in which Ridge alleged that Mosaic and four other respondents were in violation of 19 U.S.C.§ 1337, for importation of compact wallets infringing Ridge's '808 Patent. T1 at 60:23-61:9 (Weed).

The evidence regarding Ridge's claimed intellectual property rights was less than clear and does not support any conclusion about what exactly those rights are. But such conclusions are not necessary to the resolution of Ridge's claims. It suffices to say Ridge claims rights to a smart wallet design that had a finger push placed asymmetrically (i.e., not centered) on the long side of the wallet. Ridge has referred to this as the "Ridge silhouette." T1 at 25:16-26:14 (Frank).

---

including the Lobbin Deposition—is or only marginal relevance. The Court finds it unnecessary to make extensive factual findings about the negotiations.

[4] Transcripts and trial exhibits were filed as exhibits to the Cazares Declaration (Dkt. No. 182-2). The citation T1 refers to the transcript for October 27, 2025, and T2 is the transcript for October 28, 2025. This Order does not cite every piece of evidence supporting each finding of fact.

On July 14, 2023, Ridge began the deposition of Mr. Kaminski in the ITC Litigation. During a break, the parties decided to continue settlement discussions that started before the deposition, and after the break, they decided to pursue settlement instead of continuing the deposition. T1 at 110:12-20 (Weed).

Between July 9, 2023, through August 14, 2023, Benjamin Weed, outside counsel for Ridge, communicated with Stephen Lobbin, Mosaic's counsel, by email, phone calls, WebEx and/or video conferencing, and text message, regarding settlement. Mr. Weed and Mr. Lobbin exchanged numerous drafts of a settlement agreement by email and text messages. T1 at 61:10-17, 63:1-17, 69:17-70:4 (Weed).

Eventually, the parties believed that they had reached an agreement. The primary terms included that Ridge would pay Mosaic $350,000; Ridge would release Mosaic from liability for infringement of the '808 patent arising out of the Released Products, meaning Mosaic Smart Wallet products that could have infringed Ridge's '808 Patent; by October 1, 2023, Mosaic would, as relevant, stop "making, using, selling, offering for sale, or importing" the "Released Products," meaning Mosaic Smart Wallet products; that Mosaic could sell Permitted Products, defined as the wallet depicted in Appendix B to the Agreement and "other products that (a) could not reasonably infringe Ridge's Patents, and (2) are not reasonably confusingly similar to any Ridge products," and such wallet must not have visible screws; that the parties would stipulate to dismiss the District Court Action; that Ridge would dismiss Mosaic from the ITC case; and that except in an action by Ridge against Mosaic, Mosaic would not contest the validity of the '808 Patent. The Settlement Agreement also had a 60-day cure period for any Permitted Products. T1 52:16-54:20 (Frank), Pl.'s Ex. 79, Defs.' Ex. 139. Ridge paid Mosaic $350,000 for a global resolution of the District Court Litigation and the ITC Litigation, and for Mosaic "to be off of my [Ridge's] design," meaning for "the Kaminskis to stop selling wallets that look exactly like Ridge wallets." T1 at 29:22-32:8, 45:3-23, 49:8-19, 51:20-23, 53:15-54:20 (Frank).

/ / /

However, the parties ended up signing different versions of the Settlement Agreement. The different versions included the same material terms paraphrased above, but they pictured different Permitted Product designs in their respective Appendix B. *Compare* Pl.'s Ex. 79 (Ridge's Appendix B) *with* Defs.' Ex. 139 (Mosaic's Appendix B).

Mosaic signed one version of the Settlement Agreement on August 11, 2023, that included the Appendix B that appears in Defendants' Exhibit 139. This design shows a smart wallet with a semi-circle finger push centered on each of the four sides and includes text stating that the wallet would have 1 or 2 finger pushes, and/or an Air Tag holder. Defs.' Ex. 139. The Court will refer to this as the "Mosaic Version."

Ridge signed a different version of the Settlement Agreement on August 14, 2023, that included the Appendix B that appears in Plaintiff's Exhibit 79. This design shows a smart wallet with one semi-circle[5] finger push centered on a short side. Pl.'s Ex. 79. The Court will refer to this as the "Ridge Version." Ridge had IP protection on this design and could control this market.

Although it is not a term of the written Settlement Agreement, the parties had a side agreement requiring Mr. Kaminski to provide an affidavit relevant to his previous assertion of prior art that Mosaic used to challenge the validity of Ridge's '808 patent.

---

[5] During closing argument, Ridge's counsel contended that the shape of the finger push on the Permitted Products in the Ridge Version of Appendix B is not a semi-circle but instead had angles, and the Permitted Products had to exactly match that design. *See* T2 at 73:20-74:20 (Johnson). Upon review, the Ridge Version of Appendix B does show a finger push that appears to be half of a symmetrical 10-sided shape, also known as a decagon. But this distinction was not elicited in evidence. Furthermore, contrary to counsel's argument, the Settlement Agreement did not state that Permitted Mosaic Products had to be exactly like what was depicted in Appendix B. Rather, it could also be other designs that could not "reasonably infringe the Ridge Patents" or be "reasonably confusingly similar to any Ridge product." Whether a true semi-circular finger push centered on the short side could "reasonably infringe Ridge's patents" or be "reasonably confusingly similar" to Ridge's products was not explored at trial. For these reasons, the Court understands that a semi-circle finger push on the short side of the wallet is consistent with the definition of Permitted Mosaic Products in the Ridge Version of the Settlement Agreement.

T1 at 65:5-11, 71:8-72:1, Pl.'s Ex. 30; T1 at 105:16-18 (Weed).

The parties performed on their putative Settlement Agreement as follows: Ridge wired Mosaic $350,000 (TR1 at 31:13-22 (Frank)); the parties filed a stipulated dismissal of the District Court Litigation (Tr. 1 at 93:21-94:4 (Weed)); the parties moved to terminate Mosaic from the ITC Litigation (Tr. 1 at 94:5-18 (Weed)); and Mosaic has not contested the validity of Ridge's patents. Mosaic's then-attorney Mr. Lobbin also provided Ridge an affidavit ostensibly signed by Mr. Kaminski that tended to undermine his previous claims to prior art. T1 at 77:16-20 (Weed). Mr. Kaminski has since denied providing or authorizing this affidavit. T1 at 253:2-19 (S. Kaminski). Ridge used the Scott Kaminski prior art affidavit, Defs.' Ex. 222, in its summary judgment briefing in the *Mountain Voyage* case after Mr. Kaminski testified in that same case that he did not authorize his signature on the affidavit. T1 at 108:13-109:8

Sometime in October 2023—after Mosaic's October 1, 2023, deadline to stop selling Released Products—Ridge came to believe that Mosaic was still selling Released Products in breach of the Settlement Agreement. T1 at 97:4-12 (Weed).

Ridge saw that on Mosaic's Amazon.com storefront and on Mosaic's Storus.com webpage, Mosaic still listed wallets matching the Ridge silhouette with the finger push located on the lower end of a long side, and that some had visible screws. T1 at 99:15-100:9 (Weed). Such features made these Released Products that Mosaic promised not to sell after October 1, 2023.

Mr. Weed contacted Mr. Lobbin about the potential breach, but he was no longer Mosaic's counsel. Mr. Lobbin apparently reached out to Ms. Kaminski, who then reached out to Ridge's counsel. Ms. Kaminski stated that she thought she took down all product they agreed to no longer sell by the October 1, 2023, deadline, and asked Ridge's counsel to send her the URL of any infringing products so that she could investigate, suggesting it could be a problem from Amazon's end or with cookies. T1 at 152:13-20 (M. Kaminksi); Pl.'s Ex. 6 at 3. Ridge's counsel responded

with a URL, and Ms. Kaminski responded that because the item lacked screws, it did not infringe and her prior counsel Mr. Lobbin said she could sell them. Mr. Weed responded to the effect that Ms. Kaminski's view of what is a Released Product and what is a Permitted Mosaic Product is incorrect. Mr. Weed then gave Ms. Kaminksi until October 25, 2023, to pull down listings of Released Products or he would file a lawsuit for breach of contract. Ms. Kaminski then suggested that Mr. Weed call Mr. Kaminski to discuss it because Mosaic agreed to stop making a product specifically with visible screws. Mr. Weed responded that he would not speak with Mr. Kaminski since the parties had a written agreement. Mr. Weed attached the Complaint he would file if Mosaic would not withdraw the products. *See* Pl.s' Ex. 6.

On November 15, 2023, Ridge filed this lawsuit, alleging a claim for breach of contract.

On December 12, 2023, Ridge filed an application for a temporary restraining order to enjoin Mosaic from selling the Released Products, particularly during the holiday period. The copy of the Settlement Agreement attached to the TRO application was redacted. Ridge did not file an unredacted version under seal as it should have.

The Court granted the TRO and enjoined Mosaic from selling Released Products.

At the TRO hearing, Mosaic argued, among other things, that Ridge based its TRO application on banner images of wallets that Mosaic was not selling, and on listings with no inventory. Mosaic also argued that the Settlement Agreement included a 60-day cure period that meant Ridge should not have sued it when it did, but that Ridge redacted that term to hide it from the Court.

After the TRO hearing, the Court declined to enter a preliminary injunction.

Ms. Kaminski testified at trial that to comply with the TRO, she took down Mosaic's wallet listings, and that Mosaic's sales during the TRO period December 14-23 decreased from $661,874 in 2022, to $313,073 in 2023. Thus, Ms. Kaminski

testified that Mosaic lost about $348,801 in sales due to the TRO. Ms. Kaminski presented a sales report table reflecting these numbers, but Mosaic presented no underlying documentation to substantiate it. And Ms. Kaminski also testified that Mosaic "lost all of our listings" and "lost all of our sales," T1 at 176:11-21 (M. Kaminski), which is inconsistent with her testimony that Mosaic sold $313,073 worth of wallets in that period. Also, all of the wallets Mosaic sold from December 14-23 in 2022 had finger pushes on the long side, while all of the wallets Mosaic sold from December 14-23 in 2023 had finger pushes on the short side. T1 at 240:3-14 (M. Kaminski) Defs.' Ex. 149; T1 at 176:11-21 (M. Kaminski). Ms. Kaminski also testified that Mosaic's sales of smart wallets never recovered.

In 2023, Ms. Kaminski testified in a patent infringement case that Mosaic had purchased only about $2,000 worth of smart wallets. T1 at 228:20-229:16 (M. Kaminski). This tends to be inconsistent with her claim that but for the 10-day TRO, Mosaic would have sold about $348,801 more wallets than it did.

Regarding the Amazon listings, Ms. Kaminski testified the inventory for these listings was "zeroed out" so that no products could actually be purchased or sold. T1 at 195:6-196:23 (M. Kaminski). Ms. Kaminski testified that Mosaic undertook efforts to comply with the version of the settlement agreement it signed, including by developing new designs, 3-D molds, photography, marketing materials, packaging, and videos; and by taking down or zeroing out old inventory from, and uploading new inventory to, websites where Mosaic markets its products. T1 at 217:18-218:22 (M. Kaminski). Ms. Kaminski testified that Mosaic spent over $500,000 to comply with the Settlement Agreement, and that she budgets about $1 million to develop new products. T1 at 185:15-186:22; *id.* at 186:20-22. However, Defendants presented no documentary evidence to substantiate any expenses incurred by these efforts, such as invoices from designers or manufacturers of the new design.

No evidence was presented that Mosaic made any sales of smart wallets with either asymmetrical finger pushes on the long side or visible screws after it signed the

August 11, 2023, Mosaic Version of the Settlement Agreement.

The only sale in evidence is the purchase by Ridge's investigator, Mr. Collins, in April 2025, from the Storuspromotions.com website. Mr. Collins went to the Storus Promotions website to order wallets to see if what is delivered is what was advertised. T2 at 36:23-37:2 (Collins). The website offered smart wallets that appeared to be Released Products consistent with Ridge silhouettes with the finger push placed asymmetrically (i.e., on the lower part) on the long side. T2 at 38:3-39:14 (Collins), P89. Mr. Collins made a purchase, but he received a different silhouette: a smart wallet with the finger push on the short side—a design that appears to be consistent with the design authorized by the Permitted Mosaic Products reflected in both Appendices B. T2 at 40:14-19 (Collins); Pl.'s Ex. 301.

The Storus Promotions website is a website where promotional dealers with licenses can buy random samples to show their customers to place bigger orders for promotional items that Mosaic could customize for promotional use, such as by affixing a logo for a business that could give the items away to customers. It is not a direct to consumer or a wholesale type of website. The Storus Promotions website thus does not advertise products with particular specifications to end users; rather, it invites licensed promotional dealers to purchase a sample product, which Mosaic could later customize for promotional use. T1 at 163:5-12, 190:9-191:24, 194:11-25 (M. Kaminski).

Mr. Collins was not confused as to whether he was purchasing a Ridge product or a Storus product; he understood that he was purchasing a Storus product from a Storus website. T2 at 46:4-47:1 (Collins), Pl.'s Exs. 89, 102, 301. Mr. Collins paid approximately $75 for the samples, and he had no intention of using them for marketing or promotional purposes. T2 at 39:11-14; 47:2-5 (Collins).

Mia Kaminski, in her individual capacity, never signed any version of the Settlement Agreement. T1 at 153:20-154:5 (M. Kaminski).

/ / /

While Scott Kaminski acknowledged Defendants' version of the Settlement Agreement, he was not a party to that contract as it was an agreement only between Ridge and Mosaic. Defs.' Ex. 139; Pl.'s Ex. 79.

Neither Mia Kaminski nor Scott Kaminski received any payment or consideration from Ridge in their individual capacity as Ridge paid Mosaic $350,000. T1 at 154:25-155:3 (M. Kaminski).

Mr. Kaminski was never a shareholder, an executive, or an employee of Mosaic. T1 at 248:19-25 (S. Kaminski).

## III. CONCLUSIONS OF LAW[6]

### A. No Overall Credibility Findings as to Any Witness

Ridge asks the Court to find that Ms. Kaminski and Mr. Kaminski were not credible. The Court declines to make any overall credibility findings about any of the witnesses. The Court finds that doing so is not necessary to determine whether any party has met its respective burden of proving their claims or defenses. Furthermore, the Court does not find that Ms. Kaminski in particular was not credible overall. Certain of her testimony might not have been persuasive or sufficient to carry a burden of proof, but not because she generally lacks credibility. The Court finds that Mr. Kaminski's testimony was only marginally relevant and the Court will evaluate it without making an express, overall credibility determination.

### B. Neither Ms. Kaminski nor Mr. Kaminski Are Liable

Ridge presented no real case to establish that either Ms. Kaminski or Mr. Kaminski can be held liable for any of the conduct of Mosaic. Ridge made its $350,000 payment to Mosaic. The failed Settlement Agreement was between Ridge and Mosaic. Ms. Kaminski signed as CEO of Mosaic, and although Mr. Kaminski signed it, it is not clear why since he was never an employee, officer, or shareholder of

[6] Any finding of fact which is deemed a conclusion of law is incorporated herein by reference.

Mosaic. Finally, in its proposed Findings of Fact and Conclusions of Law, Ridge presents no proposed findings or conclusions to establish either Ms. Kaminski's or Mr. Kaminski's liability. The Court therefore finds in favor of Ms. Kaminski and Mr. Kaminski insofar as any claims were pled against them.

**C. Ridge Has Not Proven Its Claim for False Advertising Under the Lanham Act (15 U. S.C. § 1125)**

To establish its claims for false advertising under the Lanham Act (15 U.S.C. § 1125(a), Ridge must prove:

1. Mosaic made a false or misleading statement in a commercial advertisement about its products;
2. The statement was either literally false or likely to mislead or confuse a substantial segment of potential customers;
3. The deception was material and likely to influence purchasing decisions;
4. The false statement was made in interstate commerce; and
5. Ridge was or is likely to be injured as a result of the false statement.

9th Circuit Manual of Model Civil Jury Instructions, 15.5 Trademark Liability – Theories and Policies (Revised March 2025).

"To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014).

Ridge alleges that Mosaic engaged in false advertising when it offered for sale on its website, storuspromotions.com, a product that copied Ridge's silhouette with a finger push on the long side of the product, because what Mosaic actually shipped to customers had a finger push on the short side. Ridge argues that Storus's page on Faire.com similarly advertises a Ridge silhouette, and Ms. Kaminski testified that a purchaser would not receive a wallet with a Ridge silhouette but instead a wallet with a finger push on the short side.

Ridge has not met its burden of proving this claim.

First, Ridge's presentation essentially assumed that the "Ridge silhouette" is in fact associated with Ridge such that its unauthorized use would tend to injure Ridge's commercial interest in sales or business reputation. Ridge did not prove this.

Second, the only testimony Ridge presented going to this claim is that of its investigator Mr. Collins who purchased two wallets from the Storuspromotions.com website. Mr. Collins was not confused or misled by the listing or what he received, and he knew he was buying a Storus-branded product. Ridge presented no evidence, such as expert evidence or consumer surveys, tending to show that "the deception was material and likely to influence purchasing decisions." For one, those purchasing from Storuspromotions.com are purchasing samples to then present as promotional items to someone else. There is no evidence that the placement of a finger push on the long side as opposed to the short side would influence such a purchaser's purchasing decision. As for purchases on Faire.com, the presentation of that evidence was too uncertain to establish anything much. The Faire.com webpage purporting to offer wallets with putative Ridge silhouettes was not put into evidence. Furthermore, Ms. Kaminski testified that Faire.com is a wholesaler that likely has older product or older pictures, that Mosaic does not control what it does, and that wholesaler listings were not subject to any Settlement Agreement. Ms. Kaminski's testimony was unrebutted. The Faire.com evidence therefore does not establish any element of the Lanham Act claim by a preponderance of the evidence. Thus, Ridge presented no testimony of any likelihood of consumer confusion or that the placement of the finger push would be material.

Finally, Ridge did not present any evidence of any injury attributable to the alleged false statement. The Lanham Act contemplates an award of profits, damages, and costs. 15 U.S.C. § 1117(a). Ridge states that it seeks only Mosaic's profits, specifically, the $350,000 it paid for Mosaic to move off of the Ridge silhouette. But Ridge's payment on the failed contract is not profits attributable to Mosaic's alleged

false advertising. "Profits" turns on the defendant's sale of the misadvertised products. *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only. . ."). Ridge has presented no authority or reasoning to support the proposition that its intended consideration for the failed Settlement Agreement amounts to profits under the Lanham Act.

Ridge has therefore failed to prove its Lanham Act claim.

**D. Ridge's Claim for Unjust Enrichment/Restitution**

Ridge's SAC alleges a claim for unjust enrichment/restitution. For some reason, Ridge's proposed findings of fact begins its discussion of this claim by stating that to establish its claim for unjust enrichment/restitution, Ridge must prove the elements from the CACI jury instruction 370, Common Count: Money Had and Received. Ridge subsequently states that "[t]he elements of a claim for unjust enrichment" are those set forth in CACI 375, Restitution From Transferee Based on Quasi-Contract or Unjust Enrichment. Although a claim for money had and received and a claim for unjust enrichment/restitution are similar, they are not perfectly coextensive, as reflected in the differing CACI instructions. That Ridge presented both standards without explanation is unfortunate and figuring out this gratuitous issue needlessly taxed the Court's already scarce time. In any case, the Court disregards Ridge's erroneous reliance on CACI 370 Money Had and Received and instead will consider its claim under the standard adapted from CACI 375 Restitution / Unjust Enrichment.

The elements of a claim for unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another. CACI No. 375 (citing *Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.,* 29 Cal.App.5th 230, 238-242 (2018)).

Ridge's claim is that Mosaic must restore to Ridge the $350,000 that Ridge wired to Mosaic as consideration for Mosaic's performance of Ridge's Version of the Settlement Agreement because, due to a mutual mistake between the parties, there is no binding Settlement Agreement. Mosaic responds that Ridge is not entitled to restitution of the $350,000 because all of that consideration is offset.

First, the Court finds, and there is no dispute, that the first element is satisfied: Mosaic received $350,000 from Ridge. Second, because this payment was consideration for a contract (the Settlement Agreement) that turned out to be unenforceable, that suggests it would be unjust for Mosaic to retain the benefit.

However, Mosaic argues that it would be unjust to require restitution of this payment to Ridge because Mosaic conferred benefits on Ridge and because Ridge has unclean hands and, relatedly, should be estopped. Ridge responds that Mosaic provided it nothing of value so it should recover the entire $350,000. Thus, the question is whether it is unjust for Mosaic to retain this benefit, and relatedly, whether Mosaic provided Ridge something of value such that an equitable offset should apply

The Court does not find that Ridge had unclean hands. Mosaic contends that pursuing this litigation rather than working with Mosaic to resolve the dispute, and seeking a TRO to boot, amount to unclean hands. However, Mosaic continued to at least advertise Released Products, despite ostensibly promising not to do so. At the same time, Ridge refused to discuss this apparent breach with Mr. Kaminski, when there was a chance that this litigation could have been avoided: the parties could have discovered that they made a mutual mistake, and perhaps could have then negotiated a new, binding agreement. But that obvious solution was apparent fairly early in the litigation, yet this entire case was pursued through to trial at great expense to the parties and the Court. Furthermore, Magistrate Judge Audero spent 7 hours attempting to settle this case, to no avail. Both sides' conduct set this case in motion, and the Court cannot say who is most responsible for the failure to resolve it amicably at any time thereafter. This weighs against a finding of unclean hands. And as discussed herein, although Ridge's TRO was flawed, the Court does not find that enough to support unclean hands. Nor was Ridge's use of the Kaminski affidavit after he stated it was unauthorized enough to support a finding of unclean hands. And Mosaic did not fully articulate its estoppel defense. For these reasons, Mosaic has not established either its unclean hands defense or its estoppel defense.

Nor has Mosaic established by a preponderance of the evidence that it conferred benefits on Ridge such that an equitable offset should apply. Mr. Frank testified that Ridge paid $350,000 for Mosaic to go off of Ridge's design and to end the litigations.

Mosaic's primary argument is that it partially performed under the parties' failed Settlement Agreement because it stopped selling Released Products. Ms. Kaminski's unrebutted testimony is that Mosaic stopped selling wallets with the finger push on the long side by the October 1, 2023, deadline, and that by around then, Mosaic no longer had any of them in stock. But even if Mosaic did not make any sales of Released Products after October 1, 2023, it still *offered them for sale*, i.e., advertised them, on at least Amazon.com and on Storuspromotions.com. Both versions of the Settlement Agreement required Mosaic to stop "making, using, selling, offering for sale, or importing" Released Products after October 1, 2023. The Court reads this as a unitary obligation by Mosaic to entirely remove its Released Product from the marketplace. Ms. Kaminski admitted that even after October 1, 2023, she allowed listings with Ridge silhouettes to still appear, but she simply zeroed out the inventory, because that was easier and/or less expensive, and these listings could be something of a placeholder. This was apparently a purposeful decision, not an inadvertent oversight. It was those allegedly zeroed-out Amazon listings and pictures on Amazon that appeared to offer Released Products for sale that caused Ridge to believe Mosaic was in breach. These zeroed-out placeholder listings were therefore consequential, as indeed both versions of the Settlement Agreement barred Mosaic from offering them for sale. And Storuspromotions.com might have offered these items only to certain licensed promotions dealers and not to the general public, but it still offered them for sale: that Mosaic's intended market was limited does not negate the fact that it offered those items for sale. In sum, both versions of the Settlement Agreement required Mosaic to stop selling and offering for sale the Released Products, i.e., to stop advertising them. Mosaic's commitment to Ridge was, in effect, to remove the Released Products from the marketplace entirely, to "go off of" the

Ridge silhouette, such that Mosaic's continued conduct of offering them for sale, i.e., advertising them, meant that Mosaic did not "go off of" the Ridge silhouette and rendered Mosaic's conduct relative to the Released Products of no value to Ridge.

Mosaic also argues for an offset based on the expenses it incurred to create its new wallet design. Ms. Kaminski testified that Mosaic spent more than $500,000 to develop its new smart wallet with the finger push on the bottom, offsetting the entire $350,000. First, Ms. Kaminski testified that she always wanted to move the finger push from the lower long side because they got lots of complaints about it being hard to use, and that moving the finger push to the short side fixed this and Mosaic liked the design better. T1 163:21-165:14 (M. Kaminski). Therefore, Mosaic's moving the finger push to the short side was for Mosaic's own benefit, and not simply a "benefit" for Ridge. For this reason, it would not be equitable to provide Mosaic an offset for doing what it wanted to do anyway. Second, Mosaic provided no documentary evidence whatsoever to substantiate Ms. Kaminski's testimony regarding the more-than $500,000 cost of the redesign. Certainly, documentary evidence of such substantial expenditures should be available; that it was not produced renders the testimony unpersuasive. Thus, even if Mosaic incurred expenses to develop its new design, the Court cannot ascribe and dollar value to it, let alone find that that cost was more than $350,000 and thus offsets Ridge's entire payment. The Court notes that Mosaic was not designing a whole new wallet from scratch; it was slightly modifying its existing design by moving the finger push from the long side to the short side. That this would cost more than $500,000, even including new marketing, is not plausible on the current record. Thus, even if it made sense to treat Mosaic's redesign that it wanted anyway as a benefit to Ridge justifying an offset, the Court simply has no persuasive evidence by which to ascribe a cost to changing the design. The Court is further puzzled by the idea that Mosaic would spend more than $500,000 to design a new wallet but would not spend the certainly far more modest sums it would have cost to comply with another main term of the intended Settlement Agreement—to stop

*offering* for sale Released Products—by actually removing the listings or the images showing Released Products instead of just zeroing out the inventory. For these reasons, the Court assigns no offset value for Mosaic's expenditures to develop a new wallet design.

Nor was the end of the litigations a real benefit conferred on Ridge. The parties dismissed the District Court Litigation and Mosaic was terminated from the ITC Proceeding. But, given that there is no binding Settlement Agreement, there remain no binding releases, theoretically, some issues raised in the District Court Litigation are not finally resolved, which is part of what Ridge wanted for its $350,000. Ridge has mentioned potentially filing a patent infringement action to resolve rights that it expected the Settlement Agreement to finally resolve. The Court therefore accords no offset value to the stipulated dismissal of the District Court Litigation.

Finally, to the extent that Mosaic suggests that it is entitled to an offset based on Mr. Kaminski's prior art affidavit because it is something of value, that contention fails. Mr. Kaminski has denied authorizing that affidavit; therefore, neither he, nor by implication Mosaic, can be credited for whatever value the affidavit might have.

For all of these reasons, the Court concludes that Mosaic did not provide Ridge anything of value so as to justify an equitable offset of the $350,000 in restitution Mosaic owes Ridge. Therefore, the Court concludes that Mosaic must pay $350,000 to Ridge in restitution for the consideration Ridge paid Mosaic in connection with their failed Settlement Agreement.

**E. Mosaic Has Not Proven Its Counterclaim for Abuse of Process**

Mosaic's abuse of process claim is that Ridge intentionally redacted terms of the Settlement Agreement to conceal "material terms" in the contract from this Court and thereby obtained the TRO. FPTCO at 13

To establish a claim for abuse of process, Mosaic must establish: "(1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Sovany Beverage Co., LLC v. Newport Flavors &*

*Fragrances*, 2022 WL 21828627, at *6 (C.D. Cal. Aug. 15, 2022) (quoting *Lunsford v. Amer. Guarantee & Liability Ins. Co.*, 18 F.3d 653, 655 (9th Cir. 1994)); see also CACI 1520.

The second element is arguably met: Ridge filed its application for a TRO with redactions but without an appropriate, unredacted under seal filing, which was a procedurally improper use of the redaction process in connection with the TRO Application. However, the Court does not find that Ridge had an "ulterior purpose." Ridge sought a TRO because Mosaic's Amazon store appeared to reflect that Mosaic was still selling, or at least offering for sale, Released Products into December—more than 2 months after its October 1 deadline to stop doing so, and about two months after Ridge first brought the apparent breach to Mosaic's attention. In negotiating the Settlement Agreement, Ridge insisted that Mosaic stop selling the Released Products well before the holiday season—a term that Mosaic apparently agreed to and that was in both versions of the Agreement. Ridge sought a TRO to enforce this aspect of the Settlement Agreement. Seeking to enforce a contract term is not an "ulterior purpose," even if, as it turns out, due to a mutual mistake, the parties did not have a binding Settlement Agreement. And that the parties did not have a binding Settlement Agreement does not render Ridge's actions wrongful or reflect an ulterior purpose: both sides believed they had a binding Settlement Agreement, and that shared understanding collapsed when they realized only in this litigation that they signed different versions of the Agreement. Neither side could have anticipated that. Nor is the Court convinced that Ridge's improper redactions and failure to file a sealed version was motivated by an ulterior purpose. Mr. Weed testified that he filed the redacted version consistent with the confidentiality agreement in the Agreement itself. Certainly, he should have filed an unredacted version under seal as well, but the cure period term that Mosaic's claim relies on, by it terms, applies only to Permitted Ridge Products, while Ridge sought to enjoin Mosaic from continuing to sell the Released Products it agreed to stop selling by October 1, 2023. Therefore, the cure period term

was not relevant to the TRO Application. Mosaic also argues that Ridge had an improper purpose because this entire dispute could have been handled short of litigation. As has stated before, the Court shares the impression that, given that the parties' dispute appears to be the result of a misunderstanding, the parties could have sorted out it relatively amicably, short of litigation, had cooler heads prevailed. However, that Ridge instead filed suit and sought the TRO is not evidence of an improper purpose. Mosaic continued "selling [or] offering for sale" Released Products beyond the October 1, 2023, deadline, and encroaching on the holiday season, after agreeing, following prolonged negotiations, to stop doing so. Ridge apparently concluded that negotiations about Mosaic's apparent breach would be pointless, so it sued. The Court does not find an ulterior purpose here.

**F. Mosaic Has Not Proven Its Counterclaim for Unfair Business Practices in Violation of Cal. Bus. & Profs. Code § 17200**

California's unfair competition law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. "The statute imposes strict liability. It is not necessary to show that the defendant intended to injure anyone." *State Farm Fire & Cas. Co. v. Superior Ct.*, 45 Cal.App.4th 1093, 1102 (1996), *abrogated by Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999). As Mosaic recognizes, this claim overlaps in part with the abuse of process claim, except it does not require ulterior purpose and willfulness. A prevailing party in a UCL action is entitled to restitution, including restoration of funds in which the party has an ownership interest. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003).

To prevail on this claim, Mosaic must prove by a preponderance of the evidence that:

a. Ridge engaged in a business act or practice;
b. That the business act or practice was unlawful, unfair, or fraudulent;
c. That Mosaic suffered injury in fact; and that

d. Ridge's unlawful, unfair, or fraudulent conduct caused Mosaic's loss.

Mosaic's proposed findings of fact and conclusions of law relies on two related bases for this claim: (1) that Ridge filed a "redacted TRO application that concealed from and made misrepresentations to this Court about the cure period in the now-disputed settlement agreement," and (2) Ridge "[s]trategically sought the TRO – as opposed to a preliminary injunction – during the Q4 winter holidays when Ridge knew that complying with the TRO would cause Mosaic the greatest harm because that is the period when retailers in the wallet business, including Mosaic, do most of their sales." Ridge seeks restitution of attorneys' fees and other expenses it incurred to comply with the TRO.

Mosaic cannot establish either basis. First, both bases are clearly barred by the litigation privilege codified in Cal. Civil Code § 47(b). "[T]he litigation privilege operates to preclude liability for tort damages based on a publication or broadcast made in any judicial proceeding." *Weeden v. Hoffman*, 70 Cal.App.5th 269, 289 (2021). The privilege extends to any communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action. *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990). "The breadth of the litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution." *Olsen v. Harbison,* 191 Cal.App.4th 325, 333 (2010). Claims under California's UCL are subject to the litigation privilege. *See Rubin v. Green*, 4 Cal.4th 1187, 1193–94 (1993) (applying the litigation privilege to claims under §§ 17200 et seq. because "[i]f the policies underlying section 47(b) are sufficiently strong to support an absolute privilege [against common law tort claims]," the resulting immunity should not evaporate merely because the plaintiff discovers a conveniently different [statutory] label for pleading what is in substance an identical grievance arising from identical conduct as that protected by section 47(b).") Here,

Mosaic's UCL claim is based on Ridge's communications (its Court filings) in this proceeding, to achieve the objective of the proceedings, and is in connection to the action. This conduct is clearly protected by the litigation privilege, so Mosaic's UCL claim seeking to subject Ridge to civil liability for that conduct is absolutely barred.[7]

Apart from the litigation privilege, the claim otherwise fails. First, the Court is not convinced that failing to file unredacted documents under seal and filing a TRO Application instead of a motion for preliminary injunction are the sort of "business practices" targeted by § 17200. Mosaic has not demonstrated how § 17200 could apply to that conduct—even independent of the litigation privilege. And specifically regarding the redacted TRO Application, as discussed in connection with the abuse of process claim, it was procedurally improper to fail to file unredacted versions under seal. However, as discussed, the cure period that was redacted did not apply to the Released Products that Mosaic was ostensibly selling, so this term would have been immaterial and its redaction caused no harm. In light of the foregoing, the Court need not address the remedies Mosaic seeks. However, at least as to Mosaic's assertion that it is entitled to "restitution" for the cost of taking product off the market and offering new product for sale, which it claims exceeds $350,000, Mosaic has simply not offered substantial evidence of this, or that Mosaic incurred these expenses to comply with the TRO. For example, Ms. Kaminksi testified to the effect that she already stopped selling Released Products when the TRO was entered and was only selling smart wallets with a finger push centered on the short side. The expenses incurred to design that new product were not, therefore, incurred because of the TRO.

---

[7] Ridge did not raise the litigation privilege as a defense. However, because California's privilege is "undergirded . . , [by] the broadly applicable policy of assuring litigants 'the utmost freedom of access to the courts to secure and defend their rights ....'" and given the California Supreme Courts' repeated emphasis of "the importance of virtually unhindered access to the courts" as a matter of public policy, *Rubin v. Green*, 4 Cal.4th 1187, 1194 (1993), the Court raises it sua sponte.

Furthermore, as discussed above, Mosaic's claimed lost sales during the TRO period were unsubstantiated.

For these reasons, Mosaic has not established its unfair competition claim.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that The Ridge Wallet, LLC, has established that it is entitled to restitution of its $350,000 payment to Mosaic Brands, LLC. The Court further concludes that Mosaic Brands, LLC, has not established that an equitable offset should apply. Therefore, The Ridge Wallet, LLC, is entitled to restitution of its entire $350,000 payment to Mosaic Brands, LLC.

No other claims or defenses were established by a preponderance of the evidence.

The parties are **ORDERED** to meet and confer on a proposed Judgment consistent with this order, and to lodge a proposed Judgment for the Court's signature within 14 days of this Order. The parties' proposed Judgment must dispose of the contract-related claims that they abandoned.

**SO ORDERED.**

Dated: October 19, 2026

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE